## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michael Zurl, on behalf of himself and all others similarly situated, | Case No: |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| LEGION ATHLETICS, INC.<br>c/o Logan Christenson<br>1255 Cleveland St., Fl 4<br>Clearwater, FL 33755 | |
| Defendant. | |

Plaintiff Michael Zurl ("Plaintiff" or "Mr. Zurl"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Legion Athletics, Inc. ("Legion" or "Defendant"). For his Complaint, Plaintiff alleges the following based upon personal knowledge as to his own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

### SUMMARY OF THE ACTION

1.      Plaintiff, on behalf of himself and all putative members of the "Class" (defined below), brings claims under the New York General Business Law ("N.Y. GBL"), specifically N.Y. GBL §§ 349, *et seq.* and N.Y. GBL §§ 350, *et seq.*, against Legion as a class action. Plaintiff also brings claims for breach of implied warranty, breach of express warranty, fraud, unjust enrichment, and declaratory and injunctive relief.

2.      This action arises from the deceptive trade practices of Defendant in its manufacture and sale of nutritional powders containing branched-chain amino acids labeled "Pulse Pre-Workout Drink" and its advertisements which claim that the Product contains only ten (10)

calories per serving. The Pulse Pre-Workout Drink product line includes the following flavor variations: Fruit Punch, Caffeine Free Fruit Punch, Blue Raspberry, Caffeine Free Blue Raspberry, Green Apple, Caffeine Free Green Apple, Tropical Punch, Caffeine Free Tropical Punch, Grape, Sour Candy, Strawberry Kiwi, Watermelon, Strawberry Margarita, Apple Cider, Arctic Blast, Blood Orange, Blueberry Lemonade, Bubble Gum, Cherry Limeade, Frosted Cranberry, Pink Lemonade (collectively, the "Product"). Moreover, these products are sub-brands of the Legion portfolio, which contains other similar products (*e.g.,* "BCAA Basic Training Series," "BREACH BCAAS," "BREACH BCAA + ENERGY," etc.) and several dozen stock keeping units ("SKUs"). Moreover, the Product is purposely misbranded with a representation on its nutritional labels that the Product contains ten (10) calories per serving. Meanwhile, the actual Calorie estimate for the Product is approximately ***85 Calories per serving***, depending on formulation and use guidance, which can include multiple servings per day.

3.      Legion's representations regarding the number of Calories in the Product on its labels, webpages and other marketing and advertising media and materials is purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Legion knowingly provides non-factual information and omits relevant information in an attempt to deceive and entice sales to consumers who are seeking to purchase low-calorie products conducive to weight loss and control.

4.      Title 21 of the Code of Federal Regulations relating to nutritional labeling of food states that Calories are to be expressed to the nearest 5-Calories on labels. *See* 21 CFR 101.9(c)(1). The Food and Drug Administration ("FDA") guidance relating to nutritional labeling of food describes several methods for estimating Calories in 21 CFR § 101.9(c)(1)(i). Of these methods,

only five are relevant to the Product. These methods include (1) calories based on a per gram measurement of protein, fat, and carbohydrate of specific foods and other ingredients (this method is known as the Atwater Method); (2) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively; (3) calories calculated by assigning four, four, and nine calories per gram for protein, total carbohydrate, and total fat, respectively, but then subtracting two calories per gram for non-digestible carbohydrates and between zero and three calories per gram of sugar alcohols; (4) using data for specific food factors for particular foods or ingredients approved by the FDA; and (5) using bomb calorimetry data. *See* 21 CFR § 101.9(c)(1)(i).

5.     Furthermore, per the FDA, Calories are a "Third Group" nutrient, which means they are nutrients associated with health concerns. Accordingly, like saturated fat, cholesterol, sodium, and other Third Group nutrients, the actual Calorie level/serving must not exceed greater than 20% of the labeled claim. *See* 21 CFR 101.9(g)(5)). Further, if Calories are stated in the Supplement Facts panel, actual Calories cannot be >20% of that labeled number, pursuant to 21 CFR 101.9(g)(5).

6.     Plaintiff conducted independent Calorie calculation testing of the Product that he used. Such testing revealed that the Product contained approximately 368 calories per 100 grams. Assuming a serving size of 23.05 grams, each serving contains approximately 85 calories, significantly more than the ten calories advertised and/or implied by omission. Thus, consumers in the state of New York, such as Plaintiff, as well as consumers across the nation, have been, and continue to be, misled into purchasing Defendant's nutritional powders with the belief that they only contain ten calories.

7.      Plaintiff has analyzed the Product and evaluated it in accordance with each of the five methods provided by the FDA regulations and has concluded that every one of the five methods' results yield a calorie value that exceeds the claims on the Product label by more than 20%.

8.      Legion's representations are in direct violation of FDA guidance for labeling Calories when present at levels at or above 5 Calories/serving (*see* 21 CFR § 101.9(c)) at 5 Calorie intervals up to 50 Calories, and at 10 Calories intervals above 50 Calories. The FDA requires marketers to declare Calories and Calorie-containing nutrients within the Nutrition Facts and Supplement Facts if they are determined to be in significant amounts. Moreover, in accordance with 21 CFR 101.60(a)(4), dietary supplements may only make nutrient content claims related to Calories when there are less than 5 Calories per labeled serving.

9.      The FDA provides a clear (high resolution) example of labeling Calories for an amino acid-based supplement via https://www.fda.gov/media/99158/download. This FDA example, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 Calories and is listed as 15 based on rounding rules. The full FDA label set is included in **Appendix 1**. These labeling examples provided by the FDA remove any possibility of misunderstanding of the guidance given as such guidance pertains to this Complaint. The relevant example provided by the FDA is as follows:

**Supplement Facts**

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

10.     Nonetheless, Legion continued to sell the Product with misleading labels despite knowing the inaccuracy of such representations. Legion chose, and continues to choose, financial gain at the expense of consumers by concealing and omitting disclosure of this critical misrepresentation to consumers who, like Plaintiff, purchased the Product based specifically upon this ten-calories representation, for purposes of weight loss and control.

11.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements of caloric content established by FDA regulations.

## PARTIES

12.     Plaintiff Zurl is a citizen and resident of Remsenburg, New York. Beginning in or around October 2019, Plaintiff purchased the Legion Product from its website after viewing pictures of its label, which represented that the Product contained ten calories per serving. However, independent testing demonstrated that the Product contained substantially more Calories than Defendant advertised on the Product's label.

13.     At no point, either during Plaintiff Zurl's research on the Product or at the point of sale, did Defendant disclose that the Product actually contained significantly more Calories than the ten calories it advertised.

14.     Defendant is a limited liability corporation with its principal office in the State of Florida. Legion makes and distributes health supplements, vitamins, and nutritional supplement powders throughout the United States and, specifically, to consumers in the state of New York.

15.     Defendant's Product is sold on its own and other third-parties' websites, along with through various physical retailers, including Amazon and Walmart. The Product is purchased by consumers for personal use and consumption in the state of New York and throughout the United States.

## JURISDICTION AND VENUE

16.     This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member of the proposed class is a citizen of a different state from Legion, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

17.     This Court has general and specific jurisdiction over the Defendant because Defendant has sufficient minimum contacts within the state of New York to establish Defendant's presence in the state of New York, and certain material acts upon which this suit is based occurred within the state of New York. Legion does substantial business in the state of New York and within this District, and otherwise maintains requisite minimum contacts with the state of New York. Specifically, Legion distributed and sold the Product in the state of New York.

18.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of New York and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Product in the state of New York and in this District. Additionally, Legion distributes the Product in this District, receives substantial compensation and profits from the sale and lease of Product in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *THE SALE OF UNHEALTHY CALORIE-LADEN NUTRITIONAL SUPPLEMENT POWDERS AS A DECEPTIVE TRADE PRACTICE*

19.     Each of the preceding paragraphs is incorporated by reference herein.

20.     Advertisements, packages, and labels should provide consumers with accurate information as to the nature and quality of a product's contents and should assist them in making informed decisions. When a company misrepresents and/or omits material information about a product, it is deceptive and misleading to reasonable consumers.

21.     On its own website and other websites where the Product is sold, including Amazon and Walmart, Legion misrepresents that the Product contains only ten calories per serving and explicitly touts the Product's "clear benefits," including increased "strength and endurance."[1] For reference, some of these digital marketing images, along with direct Product labels, can be found below. Of note is the nutritional label affixed to each Product, whose image appears as a key advertising agent on many websites and which prominently, purposefully misrepresents Caloric information. Moreover, Defendant affirmatively and misleadingly states that the Product does not contain any "unnecessary junk" so "that way, you know exactly what you're getting and putting

---

[1] See Legion-Product Page; Amazon-Product Page; Walmart-Product Page

into your body," despite failing to honestly label the Calories in the Product. In other words, Defendant, explicitly and/or by omission, misrepresents the Calorie content of the Product to consumers.







**100% Natural Ingredients**

Pulse doesn't just "contain natural ingredients"—*every* ingredient is naturally sourced. We don't use artificial or synthetic substances of any kind.



**Clinically Effective Doses**

Every ingredient *and* dose (important!) in Pulse is backed by peer-reviewed scientific research demonstrating clear benefits.



**Naturally Sweetened & Flavored**

Pulse is naturally sweetened and flavored with healthy, plant-based sweeteners and flavors.



**Lab Tested**

Pulse is tested by third-party labs for heavy metals, microbes, allergens, and other contaminants to ensure it meets FDA purity standards.



**Made in USA**

Pulse is proudly made in America in NSF-certified and FDA-inspected facilities in accordance with the Current Good Manufacturing Practice (cGMP) regulations.



**100% Money-Back-Guarantee**

If you don't absolutely love Pulse, you get a prompt and courteous refund. No forms or returns necessary.



## Naturally Sweetened & Flavored

While artificial sweeteners may not be as dangerous as some people claim, studies suggest that regular consumption of these chemicals may indeed be harmful to our health.

That's why all of our supplements are naturally sweetened and flavored and contain no artificial food dyes, fillers, or other unnecessary junk.

**Sounds Good!**

## Backed by our "No Return Necessary" money-back guarantee. ×

If you don't like something of ours, guess what happens next?

No, we don't request you deliver it to a PO box in the Gobi Desert by carrier pigeon. Nor do we ask you to fill a cursed inkwell with orc's blood and demon saliva and with it complete reams of return forms written in ancient Cyrillic script.

We just . . . wait for it . . . give you your money back. Holy moo cows. And that means you can say "yes" now and decide later. You really have nothing to lose.

**Sounds Good!**



### Lab Tested for Potency & Purity

Every bottle of Pulse is analyzed in a state-of-the-art ISO 17025 accredited lab to verify what is and isn't in it. That way, you know exactly what you're getting and putting into your body.

**View Latest Lab Results**

10



22.     Despite Legion's misrepresentations and omissions relating to caloric information on every Product's label, with the same misrepresentations and omissions on its website and other marketing material, indicating that the Product contains only ten calories per serving, independent laboratory testing has revealed that the Product actually contains approximately 368 Calories per 100 grams. Following Legion's standard serving size recommendation of 23.05 grams, each

serving contains approximately eighty-five (85) Calories -- far more than the ten Calories represented on the Product's packaging and advertising and promotional materials.

23.     Legion's sale of the Product deceives consumers, such as Plaintiff, because the package is materially misleading in that it includes incorrect caloric information and, therefore, in violation of FDA regulations, misrepresents the actual number of Calories per serving of its contents.

24.     Legion's advertising deceives consumers, such as Plaintiff, by doing the same.

25.     Legion's sale of the Product is deceptive to reasonable consumers, including Plaintiff Zurl, who is in the market for low Calorie products due to health and fitness considerations, because there is no practical way for him or any other consumers to know, prior to purchase and consumption, that the Product is laden with Calories despite being marketed as containing only ten per serving.

## CLASS ACTION ALLEGATIONS

26.     Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek certification of a Nationwide Class consisting of:

> **All persons who purchased the Product in the United States from within four years of the filing of this action through the present.**

27.     Plaintiff also intends to seek certification of a New York Subclass consisting of:

> **All natural persons who purchased the Product in the state of New York from within four years of the filing of this action through the present.**

28.     Plaintiff reserves the right to re-define the Nationwide Class and New York Subclass at the conclusion of discovery as to class certification.

29.     Collectively, unless otherwise so stated, the above-defined Nationwide Class and New York Subclass are referred to herein as the "Class."

30.     Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them and the spouses of such persons.

## NUMEROSITY

31.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown and such information is in the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of individuals who are geographically dispersed throughout the nation; therefore, the number of persons who are members of the Class are so numerous that joinder of all members in one action is impracticable.

## COMMON QUESTIONS OF LAW AND FACT PREDOMINATE

32.     There is a well-defined community of interest in the questions of law and fact affecting the Class members.

33.     There are questions of law and fact common to all members of each Class: specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting and omitting the correct number of Calories in the Product. The resolution of this issue—to wit, whether Defendant knowingly sold the Product

with misleading labels and did not inform Plaintiff and Class members—is a common question of

fact and law that will affect all members of the Class in the same manner.

34.     Other questions of law and fact common to the Class that predominate over

questions that may affect individual members include:

   a.   The nature, scope, and operation of Defendant's wrongful practices;

   b.   The uniformity of the advertisements created through Defendant's
        marketing materials;

   c.   Whether Legion misrepresented and/or omitted the number of
        Calories in the Product;

   d.   Whether Defendant engaged in fraudulent and/or deceptive
        practices as to the Class members;

   e.   Whether Legion violated state consumer protection laws by
        misrepresenting and concealing the number of Calories in the
        Product;

   f.   Whether Defendant's conduct amounts to violations of the N.Y.
        GBL Sections 349 and/or 350;

   g.   Whether Legion deliberately misrepresented and omitted material
        facts to Plaintiff and the Class members;

   h.   Whether members of the Class may be notified and warned about
        the contents of the Product and have the entry of final and injunctive
        relief compelling Legion to stop its misrepresentations; and

   i.   Whether Plaintiff and the Class suffered damages because of
        Defendant's misconduct and if so, the proper measure of damages.

### *TYPICALITY*

35.     The claims and defenses of Plaintiff Zurl are representative of the Class members

he seeks to represent and typical of the claims of the Class because the Plaintiff and the Class

members all purchased the Product. Plaintiff, like all Class members, purchased the Product when

it was presented by Defendant, through its representations on the Product's label and through

Defendant's marketing and advertising of the Product, that the Product only contained 10 Calories per serving.

### ADEQUACY OF REPRESENTATION

36.     Plaintiff Zurl will fairly and adequately assert and protect the interests of the proposed Class because:

    a.  He has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

    b.  He has no conflict of interest that will interfere with the maintenance of this class action; and

    c.  He has suffered consumer-related injuries and damages.

### SUPERIORITY

37.     A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

    a.  The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

    b.  The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

    c.  Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant;

    d.  The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Legion; and

    e.  A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

38.     In the alternative, the proposed Class may be certified because:

a. the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class members, which would establish incompatible standards of conduct for Legion;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications dispositive of the interests of other Class members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c. Legion has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

39.     Defendant possessed exclusive knowledge about the number of Calories contained in the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of ingredients from suppliers, all of which are unavailable to Plaintiff and the proposed Class members.

40.     Throughout the time period relevant to this action, Defendant concealed and misrepresented the contents of the Product. As a result, neither Plaintiff nor the absent Class members could have discovered the number of Calories actually contained in the Product, even upon reasonable exercise of diligence.

41.     Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, (c) misrepresented, and (iv) continues to conceal and misrepresent critical information relating to the Product's caloric content, even though, at any point in time, it could have correctly communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

42.     Plaintiff and Class members relied on Defendant to disclose the accurate number of Calories in the Product because the contents could not be discovered through reasonable efforts by Plaintiff and the Class members.

43.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

44.     Legion was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Product. However, Defendant misrepresented the true nature, quality, and character of the Product, as described herein. Defendant knew about the number of Calories contained in the Product for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the number of Calories in the Product. Based upon the foregoing, Legion is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

**FIRST CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

45.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

46.     Legion sold the Product to Class members under implied warranties of merchantability and fitness. Legion impliedly warranted the Product to be merchantable, fit for the ordinary purposes for which it was intended to be used (including the guarantee that it was in a safe and non-defective condition for use by its purchasers for the ordinary purpose for which it was intended and was not otherwise injurious). Legion is under a duty to design, manufacture,

label, and test the Product to make it suitable for the ordinary purposes of its use—a dietary supplement that may support, and certainly not impede, weight loss and management with an energy boost.

47.     Legion breached its implied warranties for the Product by failing to accurately represent the true number of Calories contained in the Product, and otherwise inadequately marketing the product as a dietary supplement that is congruent to weight loss, weight management, and lean muscle development, thus making the Product defective, unfit for the ordinary purposes for which it was intended to be used, and not merchantable.

48.     When Plaintiff and Class members purchased the Product, Defendant represented the Product as a dietary supplement that (a) only contained ten Calories, (b) was adequately labeled, (c) would pass without objection in the trade, and (d) would be fit for the ordinary purposes for which dietary supplement powders are used.

49.     Defendant knew that its Product would be purchased by consumers seeking weight loss and management or otherwise tracking Calorie intake, so it developed the Product and its related marketing and advertisements for these specific purposes. Defendant knew that the Product would be sold by retailers for use by consumers with these specific weight loss and management and dietary needs. Accordingly, direct privity is not required to bring this cause of action.

50.     Because the Product contains significantly more than the ten Calories that were represented by Defendant to Plaintiff and the Class, the Product purchased and used by Plaintiff and Class members is not merchantable. Legion breached the implied warranty of merchantability in the sale of the Product to Plaintiff and the Class members in that the Product was not fit for its ordinary purpose and not merchantable.

51.     Legion has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Product. Legion has had the opportunity to correct the number of Calories in the Product and/or correct its misrepresentations of the Product's caloric content but has chosen not to do so. Moreover, Plaintiff has sent a notice letter to the Defendant and immediate seller seeking a remedy for the material omissions and/or misrepresentations alleged herein. When confronted with the allegations herein, neither Defendant nor the immediate seller have remedied the omissions and/or misrepresentations.

52.     As a direct and proximate result of Legion's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

53.     Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Product, overpayment, or loss of the benefit of the bargain.

## SECOND CLAIM FOR RELIEF
### Breach of Express Warranty
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

54.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

55.     Defendant extended, by way of the Product label, Product descriptions and representations as to the Product's qualities and characteristics, on its website, and via Product advertisements (among other in-person and digital marketing methods, as detailed herein) express warranties to Plaintiff and Class members that the Product only contained ten Calories per serving.

These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

56.     Defendant sold the Product, and Plaintiff and Class members purchased the Product, based upon these representations and express warranty.

57.     However, Defendant breached the express warranty in that the Product did in fact contain 85 Calories per serving, as set forth in detail herein. As a result of this breach of the express warranty, Plaintiff and other consumers did not receive the Product as warranted by Defendant.

58.     Legion has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and development process, and through the nutritional disclosures made to it by its suppliers of ingredients for the Product. Legion has had the opportunity to correct the number of Calories in the Product and/or correct its misrepresentations of the Product's caloric content but has chosen not to do so.

59.     As a proximate result of this breach of express warranty by Defendant, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**Fraud**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

60.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

61.     At all relevant times, Legion was engaged in the business of designing, manufacturing, and selling the Product.

62.     Defendant, acting through its representatives or agents, delivered the Product to distributors, manufacturers, and various other distribution channels.

63.     Defendant willfully, falsely, and knowingly omitted and misrepresented material facts regarding the quality and character of the Product.

64.     Rather than disclosing material facts to Class members, including but not limited to, the fact that the Product contains 85 Calories per serving, Legion concealed and misrepresented key information related to the Product's Calorie content and continued manufacturing and selling the Product without making accurate disclosures regarding the same.

65.     Legion omitted and misrepresented the number of Calories in the Product to drive up sales and maintain its market power, since Legion knew consumers would not purchase the Product (or would pay substantially less for the Product), had the Product's true caloric content been advertised and represented to consumers.

66.     Consumers could not have discovered the actual contents of the Product on their own. Legion was in exclusive possession of such information.

67.     Although Legion had a duty to ensure the accurate representation of its Product and to ensure accuracy of information regarding the Product's health benefits, it did not fulfill these duties.

68.     Plaintiff and Class members sustained injury due to the purchase of the Product containing more than the ten Calories represented by Defendant. Plaintiff and Class members are entitled to recover full refunds for the Product, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Product, amounts to be determined at trial.

69.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class members; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to

proof at trial that Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

### FOURTH CLAIM FOR RELIEF
### Equitable Injunctive and Declaratory Relief
### (On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)

70.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

71.     Legion is under a continuing duty to inform its customers of the nature and existence of Calories in the Product that it has sold.

72.     Plaintiff, members of the Class, and members of the general public will suffer irreparable harm if Legion is not ordered to cease misrepresenting and omitting material information regarding the true number of Calories contained in the Product.

73.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the absent Class members desire to purchase products with the same qualities and attributes as Defendant advertised the Product to have; (2) if Defendant actually manufactures the Product with the amount of Calories advertised, Plaintiff and Class members would purchase the Product; (3) Plaintiff and Class members do not have the ability to determine whether Defendant's representations concerning the Product will be truthful if they purchase the Product.

74.     Despite Plaintiff's and Class members' desire to purchase the Product in the future, they expect that Defendant will continue to misrepresent and conceal the amount of Calories in the Product and will thus suffer harm that cannot be adequately remedied by the additional claims for damages alleged herein.

**FIFTH CLAIM FOR RELIEF**
**Violation of the New York General Business Law § 349,**
**N.Y. Gen. Bus. Law § 349**
**(On behalf of the New York Subclass)**

75.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

76.     Plaintiff Zurl brings this claim individually and on behalf of the proposed New York Subclass against Legion.

77.     Plaintiff and New York Subclass members are "persons" within the meaning of the N.Y. GBL. *See* N.Y. Gen. Bus. Law § 349(h).

78.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the N.Y. GBL. *See* NY. Gen. Bus. Law § 349(b).

79.     Under N.Y. GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

80.     In the course of Legion's business, it failed to disclose and, indeed, actively misrepresented the actual number of Calories contained in the Product with the intent that consumers rely on that concealment and misrepresentation in deciding whether to purchase the Product.

81.     By intentionally misrepresenting that the Product contained substantially more than the ten calories represented by packaging and advertising the Product as a nutritional supplement conducive to consumers' health goals and muscle development, Legion engaged in deceptive acts or practices in violation of N.Y. GBL section 349.

82.     Legion's deceptive acts or practices were materially misleading and were likely to and did deceive reasonable consumers, including Plaintiff Zurl and the New York Subclass

members, relating to the number of Calories it contained and, therefore, the suitability of the Product to Plaintiff's and other New York Subclass members' fitness goals.

83. Plaintiff Zurl and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Legion suppressed.

84. Defendant's misleading conduct set forth above occurred in the conduct of trade or commerce.

85. Legion's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct also includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

86. Plaintiff Zurl and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's violations. Plaintiff Zurl and New York Subclass members are entitled to recover their actual damages or fifty dollars ($50.00), whichever is greater. Additionally, because Legion acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to one thousand dollars ($1,000.00). Plaintiff is also entitled to reasonable attorney's fees.

### SIXTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 350,**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Subclass)**

87. Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

88. Plaintiff Zurl brings this claim individually and on behalf of the proposed New York Subclass against Legion.

89.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:  False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

90.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …

91.     Defendant's labeling and advertisements relating to the Calories in the Product were false and misleading in a material way, as Legion failed to accurately reveal material facts in light of such representations or conduct.

92.     Specifically, Legion represented that the Product only contained ten calories per serving, and that it was conducive to consumer fitness goals in that way, while omitting material information concerning the true 85 Calories per serving contained in the Product.

93.     These misrepresentations and omissions have resulted in consumer injury or harm to the public interest.

94.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Product on account of the misrepresentations and omissions regarding the Caloric content of the Product.

95.     By reason of the foregoing and as a result of Legion's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars ($500.00), whichever is greater. Additionally, because Legion acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to ten thousand dollars ($10,000.00). Plaintiff is also entitled to reasonable attorney's fees.

### SEVENTH CLAIM FOR RELIEF
**Unjust Enrichment**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

96.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

97.     To the extent that there is any determination made by the Court that Plaintiff does not have standing to assert any contractual claims asserted against Legion on the alleged basis of an absence of contractual privity or otherwise, this claim is asserted in the alternative.

98.     By its wrongful acts and omissions described herein, including selling the Product with more than the ten calories per serving represented on its labels and in its marketing and advertising of the Product, Legion was unjustly enriched at the expense of Plaintiff and the Class.

99.     Plaintiff and Class members purchased a Product they otherwise would not have, paid more for a Product than they otherwise would have, and are left with a Product of diminished value and utility because of the number of Calories it actually contains. Meanwhile, Legion has sold more of the Product than it otherwise could have and charged inflated prices for the Product, thereby unjustly enriching itself.

100.    Thus, Plaintiff and Class members conferred a benefit upon Legion by purchasing the Product at the full price. Under the circumstances, it would be inequitable for Legion to retain

the profits, benefits, and other compensation obtained through its wrongful conduct in manufacturing, marketing and selling the Product to Plaintiff and Class members based on the misrepresentation and/or omissions pertaining to the Product's caloric content.

101.    Plaintiff and Class members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.   For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b.   For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.   For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d.   For an order or orders requiring Legion to adequately disclose the number of Calories in the Product and enjoining Legion from misrepresenting that the Product contains ten Calories and omitting accurate Caloric information;

e.   For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

f.   For an order awarding Plaintiff and Class members reasonable attorney fees and costs of suit, including expert witness fees; and

g.   For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

Dated: June 14, 2022                     Respectfully submitted,


Nicholas A. Migliaccio
(New York Federal Bar No. 4035838)
Jason S. Rathod*
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

D. Aaron Rihn, Esq.*
Sara J. Watkins, Esq. *
Robert Pierce & Associates, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229 (Tel.)
arihn@peircelaw.com

Robert Mackey, Esq. *
Law Offices of Robert Mackey
P.O. Box 279
Sewickley PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

* pro hac vice admission to be sought

*Attorneys for Plaintiff and Putative Class*

**Appendix 1.**



(vii) Dietary supplement of amino acids



## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

*Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

Highlighted Supplement Facts displays 4.19g of AAs yielding 16.7 Calories, which in turn has been rounded to 5s when less than 50. Thus, the Calorie declaration is compliant at 15. https://www.fda.gov/media/99158/download.